UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KATHLEEN MARY ANDREWS,

        Plaintiff,

        v.                                          Case No. 21-cv-0369-bhl

KILOLO KIJAKAZI, Acting Commissioner
of Social Security Administration,

        Defendant.

## DECISION AND ORDER

        Plaintiff Kathleen Mary Andrews seeks the reversal and remand of the Acting Commissioner of Social Security's decision denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

### PROCEDURAL BACKGROUND

        Andrews applied for DIB on May 4, 2017, alleging a disability onset date of April 1, 2017. (ECF No. 15 at 1.) Her claim was denied initially and on reconsideration, so she sought a hearing before an administrative law judge (ALJ). (*Id.*) That hearing occurred on October 24, 2019. (*Id.*) In a decision dated December 11, 2019, the ALJ found Andrews "not disabled." (*Id.*) The Appeals Council denied her request for review, and this action followed. (*Id.* at 2.)

### FACTUAL BACKGROUND

        At the time of her hearing before the ALJ, Andrews was 58 and living with her 86-year-old mother. (ECF No. 10-6 at 6; ECF No. 15 at 2.) She testified that she was "on 20-some medications," (ECF No. 10-6 at 11), primarily to treat the symptoms of her systemic lupus erythematosus (lupus), an autoimmune disease she has battled since age 24. (ECF No. 10-30 at 48.) In her decision, the ALJ found that Andrews had the following severe impairments: "[l]upus, osteoporosis, spinal disorder, hand disorder, knee disorder, and cardiovascular disorder." (ECF No. 10-5 at 63.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported [her] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to [her] conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Andrews challenges the ALJ's residual functional capacity (RFC) analysis. The ALJ concluded that Andrews could "use her upper extremities no more than *frequently* to handle, finger, and feel." (ECF No. 10-5 at 68) (emphasis added). Andrews contends that the evidence establishes much less robust prehensile strength. Because the ALJ's decision rests on substantial evidence, it will be affirmed.

**I.  The ALJ's RFC Properly Accounted for All Limitations Supported by the Medical Evidence of Record.**

A claimant's RFC is "an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). And "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *7 (July 2, 1996). In other words, the ALJ must build a "logical bridge" between the evidence of record and the RFC assessed. *See Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).

As relevant to this case, the ALJ determined that Andrews could "use her upper extremities no more than frequently to handle, finger, and feel." (ECF No. 10-5 at 68.) Andrews argues that "frequently" is still too often. The question is whether substantial evidence supports the ALJ's RFC.

According to the Social Security Administration, "'[f]requent' means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, *6 (Jan. 1, 1983). If credited, Andrews' testimony before the ALJ would definitively establish an inability to handle, finger, and feel with such regularity. In fact, she claimed that recently she could not "open up [her right] hand at all." (ECF No. 10-6 at 21.) She also stated that she could no longer rake or pick up sticks in her backyard because of her impaired grip. (*Id.* at 25-26.) And she said she "switched over to plastic" dishes because she kept dropping the glass ones. (*Id.* at 11-12.) It is hard to reconcile the inability to grasp a twig with the capacity to handle objects up to two-thirds of the workday. But there is no need for reconciliation because the ALJ found that the evidence in the record did not fully support Andrews' testimony. (ECF No. 10-5 at 69.)

An ALJ has the power and indeed the duty to evaluate a claimant's credibility. SSR 16-3p, 2017 WL 5180304, *3-5 (Oct. 25, 2017); *see Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020). This is a two-step process. First, the ALJ asks "whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. "Second, the ALJ considers whether the record supports the severity of the symptoms the [individual] alleges." *Apke*, 817 F. App'x at 257. In making this second determination, the ALJ must examine the objective medical evidence as well as other evidence, including daily activities, aggravating factors, and treatment. 20 C.F.R. §404.1529(c)(1)-(3). Once the credibility determination is made, courts afford it "'special deference' and will overturn it only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

Although Andrews alleged a serious degradation in her hand condition over the course of 2019, the ALJ did not find evidence (other than Andrews' own claims) to support this. On January 17, 2019, Dr. Irina Konon (Andrews' rheumatologist) wrote that Andrews had "[s]table chronic deformities" of her "right hand." (ECF No. 10-35 at 23.) No other medical provider noted subsequent deterioration. Actually, treatment notes continued to reference an absence of synovitis in any extremities. (ECF No. 10-5 at 70.) And Andrews did not pursue new treatment avenues.

The ALJ acted reasonably in interpreting this to mean that, contrary to her claims, Andrews' hand condition had not significantly worsened in the months preceding the hearing. *See Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("[I]f the presence of objective indicators thus makes a claim more plausible, their absence makes it less so."). Moreover, the ALJ did not rely solely on the objective medical evidence to discredit Andrews. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (noting that while an ALJ may not reject a claimant's subjective symptoms solely because they are not supported by the objective medical evidence, the ALJ may, and indeed must, "consider[] the objective evidence along with a host of other factors named in the regulations"). The ALJ also highlighted Andrews' daily activities, which included using a phone to check email, browse social media, and text; participating in exercise classes where she lifted weights; and driving a car. (ECF No. 10-5 at 71.) Andrews argues that the ALJ improperly equated the ability to perform these activities with an ability to work full time. *See Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) ("[A]n ability to engage in 'activities of daily living' . . . need not translate into an ability to work full time."). But the ALJ did no such thing. Instead, she cited Andrews' daily activities as evidence that she could use her hands more often than she claimed. *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether" her testimony is credible.).

Andrews may believe that her testimony was truthful, but, as the claimant, it was her "burden to establish not just the existence of [her condition], but to provide evidence that [said condition] support[ed] specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). Based on the ALJ's ruling, Andrews failed to do so. It was not enough that, in 2018, doctors observed hand deformities, assessed reduced grip strength, and noted the use of an orthotic. (ECF No. 10-5 at 71.) The ALJ properly confronted this potentially contradictory evidence, *see Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (holding that an ALJ must at least confront evidence contrary to the final decision), and concluded that none of it sufficiently corroborated the deterioration that Andrews testified occurred a year later. This is crucial because Andrews' case (and her argument on appeal) necessarily relies on a degrading hand condition. That is, to undermine the ALJ's credibility determination, Andrews must somehow support her testimony regarding her condition's worsening nature. But nothing in the record indicates a significant change occurred between 2017 and 2019. This evidentiary gap left

Andrews' claims unsubstantiated. Accordingly, based on the record, the Court cannot say that the ALJ's credibility determination was patently wrong.

Andrews also argues that even without her subjective testimony, the record contained sufficient evidence to require greater manipulative limitations. She takes particular issue with the way the ALJ considered the opinion of Dr. Konon. On July 20, 2017, Dr. Konon completed a "Residual Functional Capacity Questionnaire" on which she opined that Andrews could walk one block without rest, sit for one hour at a time, and stand for 15 minutes at a time; would need to take unscheduled breaks during an eight-hour workday; and was likely to have good days and bad days. (ECF No. 10-35 at 33-35.) The ALJ deemed this opinion unpersuasive because Dr. Konon did not complete the entire form, did not cite to the record, and contradicted her own treatment notes. (ECF No. 10-5 at 73.)

Under recently revised regulations, an ALJ must articulate the persuasive value of medical opinions according to their supportability and consistency. 20 C.F.R. §404.1520c(b)(2). Here, the ALJ highlighted that Dr. Konon did not support her opinion with any citations to the record. (ECF No. 10-5 at 73.) She also demonstrated that Dr. Konon's opinion was inconsistent with her own treating notes where she classified Andrews' lupus as "stable." (*Id.*) These are sufficient reasons to discredit even a treating physician's opinion. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (noting that even under the stricter, since-rescinded "treating source rule," an ALJ could discount a treating physician's opinion if it was internally inconsistent); *see also Miller v. Saul*, No. 18-C-1721, 2020 WL 58067, at *4 (E.D. Wis. Jan. 6, 2020) ("An ALJ is entitled to discount a medical opinion that provides little evidence in support of its conclusion."). In any event, nothing in Dr. Konon's opinion necessitates greater manipulative limitations, so affording the opinion more persuasive value would not necessarily produce a different outcome. *See McKinzey v. Astrue*, 641 F.3d 884, 892-93 (7th Cir. 2011) (applying harmless error analysis to an ALJ's decision).

Finally, Andrews nominally challenges the ALJ's failure to consider her foot injuries. The ALJ never addressed Andrews' bilateral metatarsalgia and deformities, occasional foot numbness, or antalgic gait. (ECF No. 21 at 4.) While the ALJ did not consider these impairments severe, "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Ignoring the interplay between

Andrews' foot condition and other severe impairments was, thus, error.  *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).  But the error was also harmless.  Andrews "does not identify any evidence regarding the combined effects of her [foot condition] and [other impairments] that would justify additional limitations in the RFC assessment."  *Weaver*, 746 F. App'x at 579.  Furthermore, as the vocational expert testified, even if Andrews were "limited to standing and walking no more than two hours in an eight-hour workday, she would continue to be able to perform [her] past relevant work as she actually performed it."  (ECF No. 10-5 at 74.)

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**.  The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 30, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge